IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT D. CAMKY,                                    6:12-cv-01973-BR

        Plaintiff,                               OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

        Defendant.


DREW L. JOHNSON
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97405
(541) 434-6466

---

    [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case.  No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**KATHRYN TASSINARI**
Harder, Wells, Baron & Manning, P.C.
474 Willamette
Suite 200
Eugene, OR 97401
(541) 686-1969

          Attorneys for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**KATHRYN ANN MILLER**
**MATHEW W. PILE**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2240
(206) 615-3760

          Attorneys for Defendant

**BROWN, Judge.**

          Plaintiff Scott D. Camky seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) payments under Title XVI.

          This Court has jurisdiction to review the Commissioner's

2 - OPINION AND ORDER

decision pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff filed his applications for DIB and SSI on November 2, 2009.  Tr. 11.  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on June 16, 2011.  Tr. 11.  At the hearing Plaintiff was not represented by an attorney.  Plaintiff, lay-witness Aubrey Harding, and a vocational expert (VE) testified at the hearing.  Tr. 11.

The ALJ issued a decision on July 26, 2011, in which he found Plaintiff is not entitled to benefits.  Tr. 28.  That decision became the final decision of the Commissioner on September 5, 2012, when the Appeals Council denied Plaintiff's request for review.  Tr. 1.

## BACKGROUND

Plaintiff was born on April 28, 1976, and was 35 years old at the time of the hearing.  Tr. 45.  Plaintiff completed "high school with special education."  Tr. 45.  Plaintiff does not have

3 - OPINION AND ORDER

any past relevant work experience.  Tr. 27.

Plaintiff alleges disability since November 1, 2005, due to blindness in his right eye, being a "slow learner," bipolar disorder, post-traumatic stress disorder (PTSD), urinary incontinence, a torn meniscus in his left knee, a hand injury, anger problems, and reflex sympathetic dystrophy.  Tr. 11, 14, 49, 56, 197.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 13-28.


## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d

4 - OPINION AND ORDER

453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec.
Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial
evidence is "relevant evidence that a reasonable mind might
accept as adequate to support a conclusion."  *Molina*, 674 F.3d.
at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574
F.3d 685, 690 (9th Cir. 2009)).  It is more than a "mere
scintilla" of evidence but less than a preponderance.  *Id.*
(citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.

2006).

## <u>DISABILITY ANALYSIS</u>

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648

F.3d at 724.  The criteria for the listed impairments, known as
Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair
v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of
a claimant's RFC is at the heart of Steps Four and Five of the
sequential analysis when the ALJ is determining whether a
claimant can still work despite severe medical impairments.  An
improper evaluation of the claimant's ability to perform specific
work-related functions "could make the difference between a
finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since November 1, 2005, his alleged onset date.  Tr. 13.

At Step Two the ALJ found Plaintiff has the severe impairments of degenerative joint disease of the left knee, borderline intellectual function, bipolar disorder, anti-social personality disorder, and obesity.  Tr. 13.

At Step Three the ALJ found Plaintiff's impairments do not

8 - OPINION AND ORDER

meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 14-17.  The ALJ found Plaintiff can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following additional limitations:  "He can occasionally climb ramps or stairs but can never climb ladders, ropes, or scaffolds.  He can perform other postural activities only frequently.  He should have no work at unprotected heights and none in the vicinity of moving machinery.  He is limited to performing work which involves simple, 1-2 step tasks."  Tr. 18.

At Step Four the ALJ concluded Plaintiff does not have any past relevant work experience.  Tr. 27.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy such as a bakery worker, garment folder, or basket filler.  Tr. 27-28. Tr. 38.  Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected the opinion of examining psychologist William A. McConochie, Ph.D.; (2) failed to develop the record as to Plaintiff's mental illness, alleged blindness, urinary incontinence, and knee injury; and (3) provided an improper hypothetical to the VE.


9 - OPINION AND ORDER

I.    **Medical Evidence**

Plaintiff contends the ALJ erred when he rejected the opinion of Dr. McConochie, examining psychologist.

A.    **Standard**

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  Generally the more consistent an opinion is with the record as a whole, the more weight an opinion should be given.  20 C.F.R. § 416.927(c)(4).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id*. at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the

nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

**B.    Opinion of Dr. McConochie**

Dr. McConochie performed a Psychodiagnostic Evaluation of Plaintiff on March 4, 2010, at the request of Disability Determination Services (DDS)[2] to "clarify possible evidence of bipolar disorder."  Tr. 578.  The background information that DDS provided to Dr. McConochie "consisted only of a function report completed by [Plaintiff]."  Tr. 578.  Dr. McConochie noted Plaintiff complained of PTSD, bipolar disorder, and problems with his left hand and knee.  Tr. 578.  Dr. McConochie observed Plaintiff's "speech was clear, eye contact is good, thought content is relevant and logical and affect his [*sic*] within normal limits."  Tr. 580.  Dr. McConochie noted Plaintiff reported he "has been knocked out numerous times in fights and once in 1995 when he was on a bicycle and hit by a car," "has difficulty controlling his temper," and "hit a guy in public just two weeks ago."  Tr. 580.  Dr. McConochie also opined Plaintiff

---

[2] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

"has a variety of symptoms suggestive of possible brain damage."
Tr. 581.

Based on Plaintiff's "history of special education, his
interview style and his response to interview questions,"
Dr. McConochie estimated Plaintiff has a verbal intelligence
quotient (IQ) between 70 and 75 and functions in the "low
borderline range of intelligence."  Tr. 581.  The ALJ noted,
however, "Dr. McConochie did not perform any recognized
intelligence testing."  Tr. 25.

Dr. McConochie gave Plaintiff an Axis I diagnosis of
"Bipolar II Disorder," an Axis II diagnosis of antisocial
personality disorder, and an Axis III diagnosis of "numerous
congenital problems, as well as left hand damage and possible
brain damage . . . .  Partial blindness, knee and foot problems,
and headaches."  Tr. 582.

Dr. McConochie opined Plaintiff is mildly-to-moderately
impaired in his ability to understand and to remember
instruction; moderately-to-severely impaired in his ability to
sustain concentration, attention, and persistence; and moderately
impaired in his ability to engage in appropriate social
interaction.  Tr. 582.

Dr. McConochie concluded Plaintiff's "primary psychological
limitations to work activity appear to include borderline verbal
intelligence, personality disorder and problems with major

depression and apparent manic episodes during which he spends excessively.  He has anger management problems.  He needs assistance in managing money."  Tr. 582-83.

The ALJ gave little weight to Dr. McConochie's opinion on the ground that it was "based entirely on [Plaintiff's] statements" and not otherwise supported by the record.  Tr. 26.

The ALJ found Plaintiff has "problems with lying."  Tr. 22. In fact, Plaintiff described himself as a "pathological liar" and admitted he "has a pathological tendency to confabulate," and "embellishes everything he says to impress people."  Tr. 366, 345; Pl.'s Reply Br. at 2.  In light of these tendencies, the ALJ concluded Plaintiff was not entirely credible as to the intensity, persistence, and limiting effects of his symptoms. Tr. 23.  Plaintiff has not challenged the ALJ's finding as to his credibility.  Tr. 23.

The Court concludes on this record that the ALJ did not err when he rejected the part of Dr. McConochie's opinion that was based solely on Plaintiff's self-reporting because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.  Part of Dr. McConochie's opinion, however, was based on his observations and impressions of Plaintiff during his examination of Plaintiff, including his estimate of Plaintiff's verbal IQ and his opinion that Plaintiff may have brain damage.  Accordingly, the Court concludes the ALJ

erred when he rejected this part of Dr. McConochie's opinion without developing the record further.

## II.  Development of the Record

Plaintiff contends the ALJ erred when he failed to develop the record as to Plaintiff's intelligence, possible brain damage, possible factitious disorder, blindness in his right eye, urinary incontinence, and left knee pain.

### A.  Standard

As noted, the Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).  When important medical evidence is incomplete, the ALJ has a duty to recontact the provider for clarification.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  *See also Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)(ALJ has a "special duty to fully and fairly develop the record" even when claimant is represented by an attorney).  "Critical to the fair and effective operation of the system for distributing social security benefits based on disability is the gathering and presentation of medical evidence." *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001)(citation omitted).  Although the burden to demonstrate a disability lies with the claimant, "it is equally clear the ALJ has a duty to assist in developing the record." *Id.* (quotation omitted; citing 20 C.F.R. §§ 404.1512(d)-(f), 416.912(d)-(f)).

"One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, *i.e.*, 'a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense.'" *Id*. (quoting 20 C.F.R. §§ 404.1519, 416.919). "[T]he Commissioner has broad latitude in ordering a consultative examination." *Id*. at 842 (quotation omitted). Although the government is not required to bear the expense of an examination for every claimant, some cases "normally require a consultative examination," including cases in which "additional evidence needed is not contained in the records of [the claimant's] medical sources" and cases involving an "ambiguity or insufficiency in the evidence [that] must be resolved." *Id*. (quoting 20 C.F.R. §§ 404.1519a(b)(1),(4) and 416.919a(b)(1),(4)).

Particularly when the claimant is unrepresented, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)(citation omitted).

When making disability determinations:

> If the evidence is consistent but we do not have
> sufficient evidence to decide whether you are
> disabled, or if after weighing the evidence we
> decide we cannot reach a conclusion about whether

> you are disabled, we will try to obtain additional
> evidence . . . .  We will request additional
> existing records, recontact your treating sources
> or any other examining sources, ask you to undergo
> a consultative examination at our expense, or ask
> you or others for more information.

20 C.F.R. § 404.1527(c)(3).

> **B.   Plaintiff's IQ and Possible Brain Damage**

Although the Court has concluded the ALJ properly discounted
Dr. McConochie's opinion to the extent that it is based on
Plaintiff's self-reporting, Dr. McConochie's opinions as to
Plaintiff's IQ and the possibility that Plaintiff has brain
damage were based at least in part on Dr. McConochie's own
observations.  Even though Dr. McConochie estimated Plaintiff's
verbal IQ was between 70 and 75 after interviewing Plaintiff, the
ALJ noted "unfortunately Dr. McConochie did not perform any
recognized intelligence testing."  Tr. 25.  Dr. McConochie also
concluded Plaintiff has "a variety of symptoms suggestive of
possible brain damage," but, again, he did not perform any tests
to support this observation.  Tr. 581.  The record also does not
reflect Plaintiff has had an IQ test or has been examined by a
physician to determine whether he has brain damage.  Although the
ALJ found Plaintiff had the impairments of borderline
intellectual functioning, bipolar disorder, and anti-social
personality disorder, the ALJ concluded Plaintiff is not
disabled.  A developed record as to Plaintiff's IQ and whether he
has possible brain damage, however, may or may not have resulted

16 - OPINION AND ORDER

in a different conclusion as to whether Plaintiff is disabled.

Accordingly, the Court concludes the ALJ erred when he failed to develop the record further as to Plaintiff's IQ and possible brain damage under these circumstances.

### C.  Possible Factitious Disorder

In November 2006 Plaintiff saw Robert H. Ablove, M.D., treating physician, for swelling in Plaintiff's left hand. Dr. Ablove noted:  "Given the pattern of his swelling, we are concerned about factitious swelling of the hand," and Dr. Ablove wanted to "sort out whether this is a factitious disorder or not."  Tr. 741.  In July 2006 Jennifer F. Stevens, M.D., another treating physician, also saw Plaintiff for left hand pain and swelling that she believed had "no apparent cause."  Tr. 536. Dr. Stevens noted Plaintiff was leaving out information in his report to her, and she wondered whether it was due to a personality or learning disorder or was intentional.  Tr. 536. The record does not reflect a follow-up evaluation took place to determine whether Plaintiff, in fact, has factitious disorder.

Accordingly, the Court concludes the ALJ erred when he failed to develop the record further as to whether Plaintiff has factitious disorder, which may or may not have resulted in a different conclusion as to whether Plaintiff is disabled.

### D.  Blindness, Urinary Incontinence, and Knee Pain

Plaintiff stated he testified at the hearing that he has

been blind in his right eye since birth, but, as noted by the ALJ, Plaintiff did not produce any evidence of having had an eye examination before 2004. Tr. 14. The ALJ also noted Plaintiff testified he needed glasses, but he also stated he could see to drive without difficulty and the last time he wore glasses was 20 years ago. Tr. 23, 54, 55.

Plaintiff also complains of urinary incontinence, but, as the ALJ pointed out, the record reflects Plaintiff "has neither sought nor obtained any treatment or evaluation apart from one consultation with a urologist five years ago, in May 2006." Tr. 14, 545-47. Although Plaintiff testified he has to urinate every 30 minutes, the ALJ noted he was able to sit through the 90-minute hearing without a break. Tr. 24.

Plaintiff also contends the ALJ failed to develop the record as to Plaintiff's left knee pain because in March 2010 DeWayde C. Perry, M.D., examining physician, recommended an MRI of Plaintiff's knee. Tr. 608. As noted by the ALJ, however, Plaintiff failed to follow up on Dr. Perry's recommendation despite Plaintiff's complaints about pain.

The existence of blindness in Plaintiff's right eye, urinary incontinence, and left knee pain does not appear to be supported by medical evidence in the record. As noted, Plaintiff conceded in his Reply Brief that he has a tendency to confabulate, and he has not challenged the ALJ's findings as to his credibility.

Accordingly, the Court concludes the ALJ did not err when he failed to develop the record as to Plaintiff's alleged impairments of blindness in his right eye and urinary incontinence because the only basis for these impairments is Plaintiff's self-reporting and the ALJ did not find Plaintiff's testimony was credible.  The Court further concludes Plaintiff's failure to obtain an MRI as recommended by Dr. Perry is evidence that his knee pain is not as severe as he alleges and, in any event, does not trigger the ALJ's duty to develop the record further as to this alleged impairment.

**III. The ALJ's hypothetical to the VE**

Plaintiff contends the ALJ's hypothetical posed to the VE was inadequate because it did not include Dr. McConochie's finding that Plaintiff has moderate-to-severe impairment in concentration, attention, and persistence and did not include Plaintiff's social-functioning limitations.

Sandra Lundblad, Psy.D., DDS reviewing physician, agreed with Dr. McConochie that Plaintiff is moderately limited in his ability to interact appropriately with the public.  Tr. 601.  Although the ALJ assigned "great weight" to Dr. Lundblad's opinion, he did not include this limitation in Plaintiff's RFC nor in his hypothetical to the VE and he did not explain why this limitation was omitted.  Tr. 26.  The Court, therefore, concludes the ALJ's omissions and errors may have affected the VE's opinion

as to Plaintiff's ability to perform jobs that exist in significant numbers in the national economy.

In addition, the Court has concluded the ALJ erred when he failed to develop the record sufficiently with respect to Plaintiff's IQ, possible brain damage, and possible factitious disorder. As a result of the error, the ALJ may have erred in his assessment of Plaintiff's RFC, and, accordingly, the ALJ's hypothetical posed to the VE may have been inadequate.

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *See, e.g.*, *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012). The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

The Ninth Circuit has established a three-part test for determining when evidence should be credited and an immediate award of benefits directed. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). The court should

grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See, e.g.,* *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

On this record the Court concludes further proceedings are necessary. Because the ALJ did not sufficiently develop the record as to Plaintiff's IQ and possible brain damage and factitious disorder, it is unclear whether Plaintiff suffers from additional severe impairments and, if so, how these impairments may have affected the ALJ's evaluation of Plaintiff's RFC. In addition, if the record had been properly developed as to these issues and if the ALJ's hypothetical posed to the VE had included Plaintiff's limitations as to social functioning, it is unclear whether the VE would have concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy.

Accordingly, the Court remands this matter to the ALJ for further proceedings (1) to develop the record as to Plaintiff's IQ and possible impairments related to factitious disorder and brain damage and to determine how those impairments, if they

21 - OPINION AND ORDER

exist, affect the ALJ's evaluation of Plaintiff's RFC; (2) to include Plaintiff's limitation as to social functioning in the ALJ's evaluation of Plaintiff's RFC or to provide reasons supported by evidence in the record as to why this limitation does not affect his evaluation of Plaintiff's RFC; and (3) to include Plaintiff's social-functioning limitations in his hypothetical posed to the VE in addition to any limitations found after further development of the record.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 2nd day of December, 2013.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


22 - OPINION AND ORDER